| 1901. | No. Transfer. | No. Certif. | No. Shares. |
|---|---|---|---|
| Sept. 17.   Ten | | 139 | 10 |

From this entry, I think it sufficiently appears that the stock was held in pledge.

Judgment of the referee affirmed.

---

### OBERG v. NORTHERN PAC. RY. CO.

(Circuit Court, D. Oregon. April 19, 1905.)

#### No. 2,834.

INJURIES—DAMAGES—EVIDENCE.

Plaintiff was injured in a railroad accident, and claimed a severe injury to the spinal cord. The evidence as to the nature and extent of the injury, both by experts testifying as witnesses for the parties and by experts appointed by the court, was conflicting, some of them testifying that plaintiff's tendency would be toward recovery, but none of them testified that he was simulating injury. Plaintiff had been obliged to have medical attention for some months. He seemed in a dazed condition, expectorating blood after the accident; had been incapable of work since the accident in 1903, and appeared in a condition of marked debility. *Held*, that plaintiff was entitled, on an inquiry after default, to a judgment for $10,000.

J. M. Long, Alex. Sweek, S. C. Spencer, and W. M. Davis, for plaintiff.

Carey & Mays and B. S. Grosscup, for defendant.

BELLINGER, District Judge. This is an action for damages resulting from a railroad accident near Chehalis, in the state of Washington, in August, 1903, by which the cars of the train were de-

railed and thrown down an embankment. The accident resulted from an explosion of the boiler of the locomotive, to which was attached an excursion train, on the occasion known as "The Elks' Excursion." The question of damages is submitted to the court, without a jury, under a statute which imposes the duty upon the court of assessing damages in such a case when the defendant, by his default, admits the negligence complained of.

The testimony on the trial, as to the nature of plaintiff's injuries, was confined to that of medical witnesses. It was so conflicting, and the particular subject of inquiry was left in so much doubt by it, that the court subsequently, with the consent of the parties, appointed six disinterested physicians, from among those of the highest professional standing, to report upon the case. These physicians have made the plaintiff's case the subject of special study, and in the award which I shall make I adopt the conclusion reached by them as to the particular subject of their inquiry.

The question of injury to the spinal cord is one upon which the medical witnesses disagree, but by far the greater number of physicians acquainted with the case are of the opinion that there is no localized injury to the spinal cord, or the medullary portion of the brain, or to the spinal accessory nerve, and they believe that the tendency in plaintiff's case will be towards recovery. All are agreed that the plaintiff is not simulating injury—that he is an honest man. Practically all are also agreed that the plaintiff is probably exaggerating his symptoms. There is a tendency among sick persons as a rule to do so; this is a matter of common knowledge; and this tendency is naturally more pronounced where the injured person has a claim pending for damages resulting from an injury. Five of the six physicians selected by the court, since the trial, to examine and report upon the case, give it as their opinion that the plaintiff is suffering from traumatic neurasthenia or hysteria superinduced by the accident in question; that it appears that his condition has been markedly worse in the past than it is now, and that therefore he is making manifest improvement in his general health; and they believe that the tendency in his case will be towards recovery. The other physician of those so selected says that "traumatic neurasthenia" can be assented to as a term to describe plaintiff's condition, provided the trauma element be given the predominance as the primal causative factor; that neurasthenia, as such, fails to explain the symptom group in certain enumerated respects, and that in his opinion the term "traumatic neurosis" would perhaps be a less misleading term by which to describe plaintiff's condition. To this physician, recovery seems impossible, and any marked improvement improbable.

The six physicians who examined the plaintiff since the trial did so at my instance, with the consent of the parties to the action, without compensation, and solely in the interest of the truth. They made a series of examinations covering an extended period and requiring much time. I know that their services in this behalf were rendered at much inconvenience, if not pecuniary loss, to

each of them. The opinions contained in the report of these physicians are independent of the medical testimony given on the trial on the part of the respective parties. The witnesses so testifying are men of the highest standing, professionally and otherwise. The conflict in their testimony is irreconcilable—one group being of the opinion that the plaintiff is suffering from an injury involving the cervical cord, and injuring the nerve roots to the spinal accessory; the opinion of the other group being in substantial accord with that of the five physicians whose investigations were made at the instance of the court since the trial. I should place the most implicit reliance upon the testimony of either group, in the absence of the conflicting opinion of the other.

This, at least, is certain: the plaintiff sustained in the accident a shock so serious that he was obliged to have medical attention for some months—a part of the time in the hospital. He seemed in a dazed condition, and was spitting blood after the accident. The local physician at Chehalis and his own physician at Portland thought that he was suffering from fractured ribs. He presents in a very marked degree, to the ordinary observation, the appearance of a man who is suffering from some physical trouble. He has been made incapable of work since the accident, which occurred in August, 1903, and has in the meantime been in a condition of marked debility. If there has been no lesion, still his condition, whether characterized as traumatic neurasthenia or neurosis, is that of a substantial injury. The statement in the report to which I refer, that the tendency in plaintiff's case is towards recovery, is noticeably cautious. I do not feel justified in drawing from it an inference of an opinion that there will be a complete recovery, nor is there any expression of an opinion as to the probable time, if ever, when plaintiff will be able to resume his trade. I have no doubt but that plaintiff has been made worse by the pendency of this action and by the anxiety and worry incident to it, but his suffering by reason of this exaggeration of his injury is none the less real, and is an element of damage proper to be considered. In my opinion, the plaintiff has suffered damage by reason of the injuries suffered in the accident in question to the amount of $10,000.

The findings and judgment of the court will be in conformity with this opinion.